UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| VS. | ) | CR NO. 03-10383-RGS-RBC |
| | ) | |
| JULIO FRANCO, ET AL., | ) | |
| Defendants | ) | |

## MOTION TO SUPPRESS FRUITS OF ILLEGAL SEARCH AND SEIZURE AND STATEMENTS OBTAINED THEREFROM

Defendant Domingo Vega respectfully moves that his Honorable Court suppress from evidence those items, including personal papers, a driver's license, four credit cards, a cellular telephone and a pager as well as any other evidence observed or seized as a result of a warrantless seizure of him and search of his person and a vehicle under his control on the evening of November 9, 2003 in Mansfield, Massachusetts by members of the Massachusetts State Police or any other Law Enforcement Agency.

Defendant Domingo Vega also moves this Honorable Court suppress any and all statements allegedly made by Domingo Vega that resulted from the unlawful searches or seizures or were made in violation of the findings in Miranda v. Arizona, 348 U.S. 436 (1966).

As grounds therefor, defendant states that said evidence was obtained in violation of his rights under Amendments IV and V of the Constitution of the United States.

Defendant further states:

1.    The police did not have a warrant to arrest or search the defendant.

2.    Defendant did not consent to any stop or search.

3.    The police did not have probable cause to justify the seizure of the defendant's person.

4.    Police did not have justification to search the defendant.

5.    Any statements allegedly made by the defendant to any law enforcement officer should be suppressed, as they were the product of a custodial interrogation, that was not preceded by the warnings required by Miranda.

6.    Any evidence discovered as a result of the statements made in violation of Miranda should be suppressed as the fruits of the unlawfully obtained statements.

Inasmuch as none of the actions of the police were supported by a warrant, the Government has the burden of showing that the challenged police conduct was lawful. United States v. Croz Jiminez, 894F2 1, 6(1st Cir. 1990). Defendant reserves the right to amend or supplement this motion in response to the Government's reply and to the extent that additional discovery or investigation require.

## STATEMENT OF FACTS

On November 9, 2003, the defendant and one, Osario, were traveling southbound on Route 95 in a black Volkswagen Jetta. Vega was operating the vehicle, and Osario was a front seat passenger.

At approximately 9:00 P.M., a State Police Officer, now known to be Trooper Bazzinotti, pulled the Jetta over. Defendant believes and therefore alleges that said stop was a mere pretext since he had broken no laws, had not changed lanes or weaved at all.

Upon being stopped, the Trooper checked the paperwork on the car, checked Mr. Vega's driver's license, and had the passenger identify himself. The Officer then played his flashlight throughout the automobile and finding nothing told the occupants that he was issuing a warning for weaving in traffic. (See Affidavit of Defendant attached hereto)

At approximately 10:30 P.M. on the same evening, the defendant Domingo Vega and Mark Osario were returning to Boston and were traveling Northbound on Route 95 in a completely different motor vehicle, a blue 1994 Audi sedan; once again, Vega was the operator and Osario was in the front passenger seat.

When they reached approximately Mansfield, Massachusetts, at Exit No. 7 of Route 95, three police vehicles surrounded the Audi being driven by Mr. Vega.

One cruiser pulled up on his left, one on his right, and another directly behind, and signaled him over.

Vega and Osario were immediately removed from the car and told to sit on a guard rail while the car was searched.

The Officers were making many statements, such as, "Didn't I stop you earlier". "What are you doing, stealing cars?" "Where's the stash." "I'm going to stick my boot up your ass." "This car has been reported stolen." "We'll all have to take the blame, but we aren't letting them go."

After about 40 minutes, the defendant and Osario were transported to the State Police Barracks at Foxboro, Massachusetts, and the items which are the subject of this motion were seized.

The defendants were processed and charged.

The Government has not indicted Mark Osario, the passenger in the vehicle operated by defendant Vega, and no contraband was found in the vehicle.

### ISSUES

### Did Police have Probable Cause to justify the stopping of the Defendant's Vehicle on 2 occasions.

The stopping of an automobile by police is a seizure for purposes of satisfying Fourth Amendment requirements.  See Delaware v. Prouse, 440 U.S. 648, 653 (1979).

If a police officer had observed a motor vehicle infraction the stopping of the motor vehicle could be justified.  In the instant matter, the defendant, though stopped twice in the same evening in different vehicles, denies that he committed any motor vehicle infractions at all.

In the first stop in South Attleboro, the Trooper at least said that the automobile was weaving but did not cite him for it.  The defendant of course denies he was weaving, and given the totality of the circumstances believes the stop was merely a pretext to identify the parties and view the interior of the vehicle.

With regard to the second stop in Mansfield, the police have not even alleged any motor vehicle infraction.

The actions of the police at the time of the second stop clearly constituted an arrest.

There were three police vehicles that surrounded the defendant; he was ordered out the car; the vehicle was searched as was he and the passenger. See United States v. Sharpe, 470 U.S. 675, 686 (1985).

Here the actions of the police constituted an arrest for which the police lacked probable cause.

In order for the police to have had probable cause to believe that a search of the car was permissible there had to exist at least probable cause that evidence of a crime could be found in the vehicle.

Probable cause is not merely a hunch or a feeling and requires a fair probability that evidence will be found in a particular location. U.S. v. Burton, 388 F2 91, 103 (3rd Cir. 2002).

It is incumbent on the Government to connect the criminal activity to the location to be searched. U.S. Government v. Genao, 281 F3 305, 308 (1st Cir. 2000), U.S. v. Baldyga, 233 F3 674, 683 (1st Cir. 2000), U.S. v. Khoonsavanh, 113 F3, 279, 283 (1st Cir. 1997). In the instant case at bar,

there were no fruits of any illegal activity found in the automobile. There was, therefore, no probable cause to arrest the defendant.

A fair reading of the affidavit of Agent Mark Tully indicates that the Government knew that the alleged crime had not occurred, their theory was that the money was in the black Volkswagen Jetta and the vehicle in which the defendant was stopped had not been mentioned other than it was owned by the co-defendant Santiago.

At the time of the stop of the defendant the Government was engaged in a fishing expedition and working on hunches or possibilities.

## CONCLUSION

That the Government had no right to stop and arrest the defendant, the automobile contained no contraband. That the arrest of the defendant and his subsequent search were warrantless and not based upon Probable Cause and any evidence or statements obtained pursuant to said arrest should be suppressed in this or any other Court.

Defendant respectfully requests an evidentiary hearing on this motion.

Respectfully Submitted
Domingo Vega
By His Attorney,


Charles A. Clifford
305 Main Street
Charlestown, MA 02129
(617) 241-7400
BBO No. 086700


## Certificate of Service


I Charles A. Clifford hereby certify that I served a copy of the above document by delivery of same in hand to Assistant U.S. Attorney Kevin P. McGrath this 3rd day of May, 2004


Charles A. Clifford