IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS
BOSTON DIVISION

FILED
CLERKS OFFICE
2007 APR 30 P 3:54

U.S. DISTRICT COURT
DISTRICT OF MASS.

DOMINGO VEGA
    Petitioner,

V.

UNITED STATES OF AMERICA
    Respondent.

CR NO:03-CR-10383(RGS)

07 CA 10841 RGS

PETITION FOR WRIT OF HABEAS
CORPUS PURSUANT TO 28 U.S.C.
SECTION 2255

STATEMENT OF THE ISSUE

In Pro-Se,

Vega is not attacking his <u>actual sentence</u> and thusly, is not violating any term of his plea agreement. Plea agreement page 4 states that Vega cannot withdraw a guilty plea based upon the <u>actual sentence</u>, but it does not indicate that Vega cannot attack his plea agreement on constitutional grounds of being overboard. Page 6 of the plea agreement states that Vega cannot attack his sentence......on any other grounds **"This would violate <u>CUSTIS V. UNITED STATES</u>, 511 U.S. 485, 490 - 49 and other Supreme Court decisions."**

    DEA Mark Tully was placed on the stand as a government witness, cross-examined and asked if he knew Vega prior to his arrest, DEA Mark Tully's answer was **"<u>NO</u>"**, he was further

questioned on the stand if he has ever spoken to Vega, he responded by saying "**NO**". DEA Mark Tully admitted on the stand that the first and only time he came in contact with Vega was at the (federal court) brought upon a complaint. After DEA Mark Tully's admissions to the above perjured fact in conflict and contradiction to the government positions. The court further allowed DEA Mark Tully cross-examination and testimony to continue through false evidence as reflected on the court transcripts.

Vega had been stopped two hours before the arrest (while driving the Jetta) by Massachusetts Trooper Bozzinotti, who was apparently acting on instructions from DEA surveillance agents. After confirming Vega's identity, Bozzinotti permitted him to continue on his way to Providence. In the absence of evidence to the contrary, it is then assumed that the reason that Bozzinotti gave for the stop (an illegal lane change) was (as Vega argues) pretextual and that the true purpose of the stop was to confirm the identities of the occupants of the Jetta. Even so, this is of no practical consequence. Bozzinotti could have arrested Vega at 9:00 PM on November 9, 2003, as probable cause for an arrest existed with the Collective Knowledge of the Task Force Officers. See **UNITED STATES V. FIASCONARO**, 315 F.3d 28, 36 (1st Cir 2002). "**Moreover, even if one assumes a Fourth Amendment violation, it is doubtful that a defendant's identity** (Vega's was already known to the DEA) **would be a suppressable fruit of an unlawful stop.**" **IMMIGRATION AND NATURALIZATION SERVICE V. LOPEZ-MENDOZA**, 468

U.S. 1032, 1039 (**1984**).

The statement above was an excerpt from Honorable Judge Richard G. Stearns ruling and final order on Defendant's motion to suppress, <u>DENIED</u>. The Defendant asserts that "**a conviction obtained through use of false evidence, known to be such by representative of the government, must fall under the due process clause of the Fourteenth Amendment; the same result obtains when the government, although not soliciting false evidence, allows it to go uncorrected when it appears.**"

Defendant's Constitutional rights to Speedy Trial is a right that cannot be waived <u>unknowingly</u> through plea agreement. If waived, it is a huge deprivation of the due process of law resulting in <u>structural error</u> that goes against the majority reasoning in the precedent set in the recent United States Supreme Court decision in <u>**U.S. V. ZEDNER**</u>, 2006. See Page 8 number 11 of the plea agreement which states: "**In this regard, Defendant hereby waives any defense to any charges which might otherwise have under any statute of limitation or the Speedy Trial Act.**" Such waiver would violate <u>ZEDNER V. U.S.</u> recent reasoning decided by U.S. Supreme Court, June 2006.

## BACKGROUND

Defendant was arrested November 9, 2003 charged in violation of 21 U.S.C. section 846 conspiracy to distribute and to possess with intent to distribute cocaine 5 kilograms or more. Defendant was further superceded on a second count in violation of 21 U.S.C. section 841(a)(1) and 18 U.S.C. section 2 which is Attempted

possession with intent to distribute cocaine, and aiding and abetting 5 kilograms or more.

Through negotiations of a plea agreement, Defendant entered a plea of guilty on April 2005. Defendant was sentenced on August 9, 2005 to a term of 120 months of imprisonment, and 5 years supervised release.

## ARGUMENT:
## MEMORANDUM OF LAW

First, it is established that a conviction obtained through use of false evidence, known to be such by representatives of the government, must fall under the Fourteenth Amendment, **MOONEY V. HOLOHAN**, 294 U.S. 103, 79 L. Ed 791, 55 S. Ct. 340, 98 ALR 406; **PYLE V. KANSAS**, 317 U.S. 213, 87 L. Ed 214, 63 S. Ct. 177; **CURRAN V. DELAWARE**, (CA3 DEL) 259 F. 2d 707. See New York ex rel. **WHITMAN V. WILSON**, 318 U.S. 688, 87 L. Ed 1083, 63 S. Ct. 840, and **WHITE V. RAGEN**, 324 U.S. 760, 89 L. Ed 1348, 65 S. Ct. 978. Compare **JONES V. KENTUCKY** (CA6 KY) 97 F. 2d 335, 338, with Re Sawyer's Petition (CA7 WIS) 229 F. 2d 805, 809. Cf. **MESAROSH V. UNITED STATES**, 352 U.S. 1, 1 L. Ed 2d 1, 77 S. Ct. 1, 9.

The same result obtains when the government, although not soliciting false evidence allows it to go uncorrected when it appears. **ALCORTA V. TEXAS**, 355 U.S. 28, 2 L. Ed 2d 9, 78 S. Ct. 103; United States ex rel. **THOMPSON V. DYE** (CA3 PA) 221 F. 2d 763; United States ex rel. **ALMEIDA V. BALDI** (CA3 PA) 195 F. 2d 815, 33 ALR2d 1407; United States ex rel.

MONTGOMERY V. RAGEN (DC 111) 86 F. Supp 382. See general annotation, 2 L. Ed 2d 1575.

The principle that a government may not knowingly use false evidence, including false testimony, to obtain a tainted conviction, implicit in any concept of ordered liberty, does not cease to apply merely because the false testimony goes only to the credibility of the witness. The court proceedings estimate of the truthfulness and reliability of a given witness may well be determined of guilt or innocence and it is upon such subtle factors as the possible interest of the witness in testifying falsely that a defendant's life or liberty may depend.

"It is of no consequence that the falsehood bore upon the witness' credibility rather than directly upon defendant's guilt." "A lie is a lie, no matter what its subject, and if it in any way relevant to the case, the prosecutor has the responsibility and duty to correct what he/she knows to be false and elicit the truth......That the prosecutor's silence was not the result of guile or a desire to prejudice matters little, for its impact was the same preventing, as it did, a proceeding that could in any real sense be termed fair."

Had the court proceeding been apprised of the true facts, however, it might well have concluded that DEA Mark Tully fabricated testimony in order to curry the favor of the very representative of the government who was prosecuting the case in which DEA Mark Tully was testifying, for DEA Mark Tully might have believed that such as representative was in a position

to implement (as he ultimately attempted to do) any promise of consideration. See NAPUE V. ILLINOIS, 360 U.S. 264, 3 L. Ed 2d 1217, 79 S. Ct. 1173.

The cases analyzing such traffic stops usually take the view that if Massachusetts Trooper Bozzinotti who made the stop has checked out the driver's license and vehicle registration and has written up the traffic citation or warning, then any extension of the stop thereafter for the purpose of questioning about drugs or seeking consent to search for drugs is illegal. See, e.g., UNITED STATES V. FERNANDEZ, 18 F. 3d 874 (10th Cir 1994); PEOPLE V. BANKS, 650 N.E. 2d 833 (N.Y. 1995). Dictum in some cases e.g., UNITED STATES V. CUMMINS, 920 F. 2d 498 (8th Cir 1990), suggests that all of the officer's investigative activity must be limited to the offense for which the stop was made unless reasonable suspicion develops as to other criminatlity, e.g., drug possession. However, courts often deem questioning on unrelated matters absent such suspicion as unobjectionable provide it is accomplished within the permissible time span of the traffic stop. See UNITED STATES V. CRAIN, 33 F. 3d 480 (5th Cir 1994).
In OHIO V. ROBINETTE, 519 U.S. 33, 117 S. Ct. 417, 136 L. Ed 2d 347 (1996). The ROBINETTE majority was not totally silent regarding this theory. The defendant argued the court could not reach the voluntariness issue because the state court decision set out a valid alternative ground in the following language: "When the motivation behind a police officer's continued dentention of a person stopped for a traffic violation is

not related to the purpose of the original, constitutional stop, and when that continued detention is not based on articulable facts giving rise to a suspicion of some separate illegal activity justifying an extension of the detention, the continued detention constitutes an illegal seizure." A violation of the Fourth Amendment, relying on WHREN V. U.S., 517 US 806,116 S.Ct 1769, 135 L.Ed 2d 89(1996). Also: see TERRY V. OHIO, 392 U.S. 1 (1968) and UNITED STATES V. DAVIS, 6th Cir, N03-1451, 2005.

   The Speedy Trial Act generally requires a trial to begin within 70 days of the filing of an information or indictment or the defendant's initial appearance, 18 U.S.C. section 3161(c)(1), but the Act recognizes that criminal cases vary widely and that there are valid reasons for greater delay in particular cases. To provide the necessary flexibility, the Act includes a long and detailed list of periods of delay that are excluded in computing the time within which trial must start. See section 3161(h)(1), "delay resulting from the absence or unavailability of the defendant or an essential witness," section 316(h)(3), "delay resulting from the fact that the defendant is mentally incompetent or physically unable to stand trial," section 3161(h)(4), and "(a) reasonable period of delay when the defendant is joined for trial with a co-defendant as to whom the time for trial has not run and no motion for severance has been granted," section 3161(h)(7).

   Much of the Act's flexibility is furnished by section 3161(h)(8) which governs ends-of-justice continuances, and which we set out in relevant part in the margin. This provision

permits a district court to grant a continuance and to exclude the resulting delay of the court, after considering certain factors, makes on-the-record findings that the ends of justice served by granting the continuance outweigh the public's and defendant's interests in a speedy trial. This provision gives the district court discretion with limits and subject to specific procedures to accommodate limited delays for case-specific needs.

To promote compliance with its requirements, the Act contains enforcement and sanctions provisions. If a trial does not begin on time, the defendant may move, before the start of trial or the entry of a guilty plea, to dismiss the charges, and if a meritorious and timely motion to dismiss is filed, the district court must dismiss with or without prejudice. The purpose of the Act also cuts against exclusion on the grounds of mere consent or waiver. If the Act were designed solely to protect a defendant's right to a speedy trial, it would make sense to allow a defendant to waive the application of the Act. But the Act was designed with the public interest firmly in mind. See, e.g., 18 U.S.C. section 3161(h)(8)(A) (to exclude delay resulting from a continuance — even one "granted.....at the request of the defendant" — the district court must find **"that the end of justice served... ...outweighs the best interest of the public and the defendant in a speedy trial,"** (emphasis added)). That public interest cannot be served, the Act recognizes, if defendant may opt out of the Act entirely.

"The Act seeks to protect and promote speedy trial interests that go beyond the rights of the defendant; although the Sixth Amendment recognized a societal interest in prompt dispositions, it primarily safeguards the defendant's speedy trial right — which may or may not be in accord with society's." S. Rep. No. 96 - 390, P. 3 (1979). Because defendant may be content to remain on pretrial release, and indeed may welcome delay, it is unsurprising that Congress refrained from empowering defendants to make prospective waivers of the Act's application. See S. Rep. No. 96-212, at 29. ("Because of the Act's emphasis on that societal right, a defendant ought not be permitted to waive rights that are not his or hers alone to relinquish.") See: ZEDNER V. UNITED STATES, U.S. No. 05-5992, (2006).

For these reasons defendant asserts that this case at bar should be remanded and reviewed through evidentiary hearing and adhere to the opinion set-forth.

Respectfully Submitted on this 7th day of august 2006.

_Domingo Vega_ In Pro-Se
DOMINGO VEGA
#24994-038
L.S.C.I. ALLENWOOD
P.O. BOX 1000
WHITE DEER, PA 17887

## CERTIFICATE OF SERVICE

I, hereby certify that copies of the PETITION FOR WRIT OF HABEAS CORPUS PURSUANT TO 28 U.S.C. 2255 was placed in the prison mailing system on the 7th day of August 2006, to be sent to the United States District Court, for the District of Massachusetts and the United States District Attorney 1 Courthouse Way, Suite 9200, Boston, MA 02210, prepaid first-class U.S. Mail.

Date: August 7th 2006

Respectfully Submitted

*Domingo Vega*
DOMINGO VEGA
In Pro-Se